

There is a newer version of the New Hampshire Revised Statutes

View our newest version here

# 2006 New Hampshire Statutes - Section 491:8-a Motions for Summary Judgment.

I. A party seeking to recover upon a claim, counterclaim, or crossclaim, or to obtain a declaratory judgment, may, at any time after the defendant has appeared, move for summary judgment in his favor upon all or any part thereof. A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move for a summary judgment in his favor as to all or any part thereof.

II. Any party seeking summary judgment shall accompany his motion with an affidavit based upon personal knowledge of admissible facts as to which it appears affirmatively that the affiants will be competent to testify. The facts stated in the accompanying affidavits shall be taken to be admitted for the purpose of the motion, unless within 30 days contradictory affidavits based on personal knowledge are filed or the opposing party files an affidavit showing specifically and clearly reasonable grounds for believing that contradictory evidence can be presented at a trial but cannot be furnished by affidavits. Copies of all motions and affidavits shall, upon filing, be furnished to opposing counsel or to the opposing party, if the opposing party is not represented by counsel.

III. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.

IV. If affidavits are not filed by the party opposing the summary judgment within 30 days, judgment shall be entered on the next judgment day in accordance with the facts. When a

2/16/2023

*[handwritten annotations: On File, Chase admitting, I was proscuted for Speeding, Affidavit under oath]*

EVIDENCE

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
                    Plaintiff                )        Civil Action No.: 17-CV-237-JL
                                              )
v.                                            )        **JURY TRIAL DEMANDED**
                                              )
Town of Wolfeboro, Shane Emerson and          )
Stuart Chase,                                 )
                    Defendants                )
                                              )

**ANSWER AND AFFIRMATIVE DEFENSES
OF DEFENDANTS TOWN OF WOLFEBORO,
SHANE EMERSON AND STUART CHASE**

*hello no I do see evidence in
Court this file*

**Preface**

In an order dated February 6, 2018 (Document 75), this Court determined that the

following claims are the claims proceeding in the action:

1.    Defendant's (former) Wolfeboro Police Department Chief, Stuart Chase,
      Wolfeboro Police Department Officer Shane Emerson, and (former)
      Wolfeboro Police Department Officer James O'Brien, sued in their
      individual capacities, violated Mrs. Amatucci's rights under the Fourth
      Amendment and under state tort law, by (a) subjecting her to a prosecution
      for a speeding offense alleged to have occurred on May 7, 2014, and (b)
      detaining her pretrial during that prosecution without having probable
      cause, and with an improper purpose, where she was acquitted of speeding
      after a trial.

2.    The Town of Wolfeboro is liable to Mrs. Amatucci for subjecting her to
      prosecution for a speeding offense alleged to have occurred on May 7,
      2014, and for her pretrial detention relating to that prosecution:

EVIDENCE

6. Ms. Amatucci was then transported to the House of Corrections in Ossipee for processing. I had no contact or conversation with Ms. Amatucci during the incident.

7. During the entire incident, I gave no instructions to Officer Emerson or any other law enforcement personnel to pursue Ms Amatucci or to arrest her. Officer Emerson acted in accordance with his duties and responsibilities as a patrolman, without any instructions or guidance at the time from the Police Chief. Also, I played no role in her subsequent prosecution for speeding and failure to obey police officers.

The above is true to the best of my knowledge, information and belief.

Stuart Chase

STATE OF New Hampshire
COUNTY OF Carroll

Before me on this 24 day of July, 2018, personally appeared the above-subscribed Stuart Chase, and made oath that the statements contained are true and correct to the best of his knowledge, information and belief.

Bruce J Burrows

Notary Public/Justice of the Peace
My Commission Expires: March 29 2019

BRUCE J. BURROWS, Justice of the Peace
My Commission Expires March 29, 2019

13240571.1

## Summary Judgment Standard

"The purpose of summary judgment is to enable a court 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Fernández-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 328 (1st Cir. 2015) (citation omitted). "Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20-21 (1st Cir. 2018) (citation omitted); see Fed. R. Civ. P. 56(a)). At summary judgment, "[a]n issue is 'genuine' if the evidence would enable a reasonable factfinder to decide the issue in favor of either party." Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). "A fact is 'material' when its (non)existence could change a case's outcome." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018), rev. denied, 885 F.3d 52 (1st Cir. 2018).

To obtain summary judgment, "[t]he moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986). "This demonstration must be accomplished by reference to materials of evidentiary

2   (F6)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

Carroll County

3rd Circuit Court-District Division

## IN RE: STATE OF NEW HAMPSHIRE V. JOSEPHINE AMATUCCI

### 484-2014-CR-00836

### ORDER AFTER TRAIL ON THE MERITS

This matter came on for a trial on the merits of two complaints entered against the defendant. The State and defendant participated. After due consideration of the testimony and other evidence submitted, as well as the court's view of the roadway area involved, the court enters the following findings of fact, rulings of law and order. The defendant is found NOT GUILY of the violation offense of speeding, complaint and GUILTY of the class B misdemeanor for disobeying a police officer.

The State entered two complaints against the defendant. The violation level offense alleges an event of what is commonly referred to as speeding. The specific allegations are that on May 7, 2014, the defendant drove her vehicle on a way, identified as Center Street, Wolfeboro, NH, at a speed greater than was reasonable and prudent under the conditions prevailing, and specified that defendant was traveling at a speed of 42 mile per hour, when the prima [sic] "facia" lawful speed at the time and place of violation being 30 mph. The class B misdemeanor offense alleges that on the same date and location, while operating her motor vehicle, she purposely neglected to stop when signaled to stop by law by a law enforcement officer, who was in a fully marked police cruiser and who signaled defendant to stop by use of emergency lights and sirens.

The evidence presented at trial shows, beyond a reasonable doubt that defendant was operating her motor vehicle on a public way in New Hampshire, being Center Street in Wolfeboro, NH, on May 7, 2015. The evidence also shows that the officer who filed the complaint was a certified radar operator and that the radar unit in the officer's cruiser was certified and still within the certification period when the

...time, both before and after the stop, and found determined the radar unit e operating properly and accurately.

The evidence presented through the officer's testimony shows that he was traveling toward the downtown area of Wolfeboro on Center Street, and was advised by dispatch that the person of interest involved in the incident he was responding to had left that location. It is shown by dispatch log, State's exhibit 7, that the officer had been advised of description of the defendant's car. Although he testified that he was not on the look-out for her, it is reasonable to infer that he was indeed on the look-out for the defendant. The dispatch log, State's Exhibit 7, appears to support this inference.

The officer testified that when he was near what is commonly referred to as the "Mast Landing" area, he observed a vehicle come around the curve which appeared to be speeding. He testified that he activated his radar at a point that two vehicles were in the radar's range of interception. The radar picked up the signal from the car moving the fastest. It was ultimately determined that vehicle was driven by the defendant and the radar readout showed that defendant was traveling 42 miles per hour in a posted 30 mile per hour zone. This area, showing the officer's point of view, is depicted on the two photographs entered as State's exhibit 6.

It is at this point that the officer advised dispatch that he was "attempting to stop her on Center Street" and gives dispatch the defendant's license plate number. Exhibit 7 at 1252. At 1253, the officer advises dispatch that the "reason for the stop was 42 in a 30 by Mast Landing". Exhibit 7. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his cell phone about who he should be pursuing.

The officer testified that he activated his blue strobe lights and siren on his cruiser, pulled into the Mast Landing parking lot to turn around and began to pursue the defendant. The defendant continued to travel northbound on Center Street, Route 28, albeit apparently not speeding along the way, for approximately four miles, before she pulled over in response to a Carroll County Sheriff's Department standing in the road and signaling her to stop.

2

There was some conflicting evidence presented in the officer's report which referred to two cars being situated ahead of the defendant's vehicle, whereas in his testimony, he stated that there only two cars, of which defendant was one, and the one that was traveling the fastest. Otherwise, there was no specific testimony about the road or whether conditions, the amount of traffic on the road generally, or or any side street, any pedestrian activity, or any other specific evidence of actual or potential hazards under those circumstances on the date and time of the alleged offense. The court's view of the location where defendant is alleged to have been speeding shows a well-traveled, narrow roadway, with multiple intersecting streets and driveways, but a clear view of the roadway ahead in either direction for some distance.

RSA 265:60, I prohibits operating a vehicle on a way at a speed which is greater than reasonable and prudent under the conditions and having regard to actual and potential hazards then existing. Subsection II of RSA 265:60 provides that the speed of a vehicle in excess of the limit specified, in this case, 42 miles per hour in the posted 30 miles per hour zone, "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Here we have the seemly conflicting evidence of no specific conditions presented that there were actual or potential hazards at that place and time that the defendant was traveling 12 miles per hour over the posted speed limit, but that that speed is prima facie unreasonable and imprudent. This conflicting evidence leaves the court with no basis for a finding, beyond a reasonable doubt, that the defendant was traveling at a speed which was unreasonable and imprudent for the conditions existing, having in mind the actual and potential hazards associated with those conditions. Therefore, there must be a finding of not guilty.

As to the complaint alleging the class B misdemeanor for disobeying a police officer, RSA 265:4, I, (c) instructs that while driving a vehicle, no person shall purposely neglect to stop when signaled to stop by any law enforcement officer who signals the person to stop by means of audible or visual emergency warning signals. Clearly the evidence presented shows, beyond a reasonable doubt, that the defendant did not stop when signaled to do so by the officers, using his emergence warning lights and siren, for upwards to a .4 mile distance. While there is no direct evidence of the defendant's state of mind

esented, the circumstances presented by the evidence allows for no other conclusion than that the defendant acted purposefully in choosing to not stop as directed by the officer. Therefore, she is found guilty of the charge of disobeying a police officer.

While the specific statute specifies that a person who violates the provisions of RSA 265:4, I, (c) shall be guilty of a class A misdemeanor, the State made the choice before the beginning of trial to prosecute the matter as a class B misdemeanor, even after the defendant had had the benefit of a court appointed counsel through portions of the pre-trial proceedings, and then discharged her counsel by her own choice, and pursued the matter as a self-presented defendant.

The clerks' office will scheduled the matter for a sentencing hearing on the class B misdemeanor conviction for disobeying a police officer.

So Ordered.

_____6/25/2015_____
Date

_____
Judge

James R. Patten, Justice
3rd Circuit Court

*CROSS* *[handwritten, illegible]*

*EXHIBIT 2*

64

1    arrest?

2              MR. MULLEN:   The arrest in this case is -- and

3    I'm -- I thought it was clear and that it would be --

4    I'll take the -- I'll apologize for that, but the arrest

5    was for disobeying a police officer, your Honor.

6              MS. AMATUCCI:   It was both.   *PROSECUTION IS*
                                             *the issue For*
7              MR. MULLEN:   The stop was for speeding.  *SPEEDING*
                                                         *NoT the ARRESt*
8              MS. AMATUCCI:   It was --

9              MR. MULLEN:   Initially was supposed to be for

10   speeding.   If she had stopped -- and I'm speculating

11   here.   If she had stopped, I fully believe she would

12   have been given a warning, your Honor, but she continued

13   for four miles and that's -- that's what precipitated

14   the arrest and the seizure and the booking and the      *I PROVED I WAS*

15   prosecution on the misdemeanor charge.   *ARRESTED & DETAINED*
                                              *For*
16             That's what she was arrested for.   She was *SPEED*

17   given a citation on the -- for -- on the complaint, it

18   said violation.   Show up in court on such and such a

19   date.   And -- but the arrest was for disobeying a police

20   officer, which is a misdemeanor; at the time,

21   misdemeanor A, which was subsequently reduced to a

22   misdemeanor B.

23             THE COURT:   Do we have that citation in the

24   record then?

*TRANCRIPT OF HEARING*
*For Cross Summary Judgments*

1       Did you look at all the evidence?

2       THE COURT:  Yes.

3       MS. AMATUCCI:  Okay.  Did you see where the

4   arrest is considered unlawful in New Hampshire for

5   speeding?  Did you see that?

6       THE COURT:  I -- what I saw was that you were

7   arrested for -- you were arrested for failing to obey a

8   police officer and failing to stop.  That's what I saw

9   happened in this case.

10      MS. AMATUCCI:  A Fourth Amendment malicious

11  prosecution, which is what you allowed, is all about the

12  unlawful arrest, not about --

13      THE COURT:  I know, but the evidence

14  doesn't -- the evidence does not establish that you were

15  arrested for speeding.  The evidence establishes that

16  you were arrested for failing to obey and disobeying a

17  police officer and refusing to stop.  That's what the

18  evidence suggests.  And you haven't done anything --

19      MS. AMATUCCI:  I was --

20      THE COURT:  -- to rebut that.

21      MS. AMATUCCI:  -- prosecuted for speeding.

22      THE COURT:  But I --

23      MS. AMATUCCI:  Is that evidence?

24      THE COURT:  Yes, but you were also prosecuted

25  at the very same time -- *FOR SPEEDING*

*45 (C)   LAPLANTE REMOVED THE REST*
*OF THIS STATEMENT FROM*
*THIS TRANSCRIPT*
*FRAUD*

*TRANSCRIPT — OF HEARING FOR
CROSS SUMMARY JUDGMENT
JUDGMENTS*

1          MS. AMATUCCI:  Also -- I could have been also

2   been prosecuted for kidnapping, but we're not talking

3   about also.  We're talking about what's before this

4   Court.

5          THE COURT:  But the also -- see, what you

6   don't understand is that the also does matter.  The also

7   does matter.  Because everything that happened to you,

8   all right, for the speeding citation --

9          MS. AMATUCCI:  But we're only talking about

10  the --

11         THE COURT:  You're --

12         MS. AMATUCCI:  We're only talking about one

13  issue.

14         THE COURT:  You're only talking about one

15  issue, but I have to talk about reality and the facts

16  and what happened in the case.  I have to look at

17  evidence.  They've provided evidence.  And despite many,

18  many times of explaining that --

19         MS. AMATUCCI:  They never provided evidence

20  for the unlawful arrest, the unlawful arrest, the

21  unlawful arrest.  What evidence did they produce for the

22  unlawful arrest?  Nothing.  They cannot tell you that I

23  was lawfully arrested.

24         THE COURT:  And --

25         MS. AMATUCCI:  That's the issue.  And

*76 (c)*

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

3rd Circuit - District Division - Ossipee
96 Water Village Rd., Box 2
Ossipee NH  03864

Telephone: 1-855-212-123
TTY/TDD Relay: (800) 735-296
http://www.courts.state.nh.u

**June 16, 2016**

### JOSEPHINE AMATUCCI
### PO BOX 272
### WOLFEBORO FALLS NH  03896

.

Case Name:     **State v. Josephine Amatucci**
Case Number:   **464-2014-CR-00836**

The following Order was entered regarding Defendant's "Motion Ordering Judge Patten to Remove My Conviction Immediately":

   6/9/2016 - This judge has recused himself from any further matters or pleadings
        involving or filed by Ms. Amatucci.


                                        Elaine J. Lowe
                                        Clerk of Court

(464260)

C:  Simon Robert Brown, ESQ

/ A

777

## THE STATE OF NEW HAMPSHIRE

3RD CIRCUIT-DISTRICT COURT-OSSIPEE


State

v.

Josephine Amatucci                    Case 464-2014-CR-00836


MOTION ORDERING JUDGE PATTEN TO REMOVE MY CONVICTION IMMEDIATELY


1.     The judge knows the law I will not repeat it,   Judge patten knows that there was no

probable cause and no warrant to stop my car,   I was not committing a Felony,   and I was

not causing a Disturbance of the peace  (violence) which is the only time a police officer

can stop a car without probable cause and a warrant.     Therefore this judge knew all along

that the  Seizure by Police Chief Chase was FEDERALLY UNLAWFUL.   And knew that no

conviction could be held when  there was no warrant to SEIZE me to begin with.

2.     This judge was hiding the true CD of the events that occurred in the Public Safety

Building,   he was hiding my INTENT to escape the terrorism of Chief Chase where in the

CD the judge could see Chief Chase refusing to take my evidence of officer Rondeau's

bogus traffic violation,   and he could see Chase pointing his finger in my face,   and

pushing me out the door.   Threatening and two assaults.   That was my INTENT of getting

away from a criminal.

3.     The judge knew all along I was NOT SPEEDING,   he knew all along the PURSUIT was

a set-up to stop me from reaching the Sheriff's office, that Chase was only Pursuing ME



not because I was committing any crime,  but to stop me from reaching the Sheriff's office
to stop me from telling the Sheriff what he did to me in the Public Safety Building.

4.       There was no warrant,  no probable cause,  you knew he was violating the FEDERAL
CONSTITUTION,  you knew if there was no legal arrest the defendant was not in "OFFICIAL
CUSTODY'  within the meaning of the escape statute so that she could not be convicted of the
crime of disobeying a police officer.

5.       Right now the  Supreme Court is refusing to address my right to a jury trial
by pretending I never asked them for a jury trial,   even though the request for a jury trial
was the only reason for my appeal,  I did not want a bias court to litigate my case.  I
mentioned my right to a jury trial  on the first page and on the last page of my appeal,
asking ONLY FOR A JURY TRIAL AND NOT AN APPEAL.

6.       As the only justice is with a jury trial of my peers.

7.       Now,  you are not going to get away with UNLAWFULLY convicting me,   I want the
conviction OVERTURNED IMMEDIATELY.   It is your duty.

8.       If you do not remove the conviction IMMEDIATELY I will go to see Attorney
Mittlehouser who will advise me what to do with you,  short of having you disbarred.

9.       The infliction you have brought down on my life is beyond belief,   and I will
spend all my living breath in going after you for allowing the prosecutor and the police
to abuse me.


Josephine Amatucci

May 4, 2016

c.   Prosecutor Tim Morgan

$3\ A$

2